Please register your name using the QR code on this screen. Our argument docket is Eden versus Aynan, and this case was set also for 10 minutes per side. And so, if the appellant wants rebuttal, the appellant should try to stop before the whole 10 minutes is done. I think we're ready to proceed. Good morning, Your Honors. Good morning, Your Honors. May it please the Court. My name is Samuel Weiss. I represent the appellant, Mr. Aaron Eaton. I'd like to reserve three minutes for rebuttal.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Mr. Eaton was entitled to a trial on his ADA claims. The district court granted summary judgment to defendants on two theories in a single sentence. We explained in our opening brief why those theories were incorrect and defendants do not defend them on appeal. Instead, they argue for affirmance on one of three alternative grounds. I'm happy to discuss any of them. We believe they're all equally without merit. To get to the first, defendants argue that Mr. Eaton failed to create a fact question on whether he had some kind of permanent injury as a result of showering for nearly a year in black mold despite having respiratory disabilities. So the first issue with this is that demonstrating some kind of permanent injury is simply not an element of the ADA. Counsel, I'm going to, if I may, take you to the issue that is of most concern to me and that has to do with the availability of relief. Your client is no longer housed at this facility so the claims for injunctive and declaratory relief are probably out of the case now. So what is it that your client would have to demonstrate to obtain damages? Is it enough to show a failure of reasonable accommodation or does he have to show deliberate indifference and if it is the latter, what in the current record would be sufficient to allow that to go forward? You're correct, Your Honor, on all grounds. So it's true that if he's indeed, because of the transfer, the equitable relief is moot. The question goes to damages and to go to damages, yes, he does have to demonstrate deliberate indifference. So there were things that were done. There was periodic cleaning and various things and they were not successful, certainly according to your client's version of the facts. But how is that deliberate indifference as distinct from ineffectiveness or negligence? Certainly, and it's a critical question. So deliberate indifference is merely a mens rea standard. It's the equivalent of criminal law recklessness. It just means a knowing, some kind of knowing disregard. And here we have a knowledge of a substantial likelihood of the violation of a federal statute. And so the real rub here is whether this accommodation was reasonable, whether they were put on notice that this accommodation was reasonable at which, as this court has repeatedly held as a fact-specific, context-specific inquiry that's typically left to a fact finder. And what the deliberate indifference requirement shows for damages as opposed to equitable relief is that to get an injunction, negligent or even more like strict liability requirements can be had to force compliance with Title II of the ADA. However, here defendants need to be on notice. As this court clarified in Duval, it's not enough to do anything. It has to, if their actions still demonstrate a substantial likelihood of a failure to accommodate. And so the question really here is were defendants put on adequate notice? And the answer is overwhelmingly yes. So Mr. Eaton, although not exclusively Mr. Eaton, repeatedly complained. He started complaining. Just in the record, we have formal grievances in March. In May, we have somebody, a staff member coming onto the unit, taking pictures, saying this is a problem, we've got to fix it. We have a letter. That seems to be the opposite of deliberate indifference. Your Honor, it would be the opposite of deliberate indifference if they did fix it, but they didn't. Instead, what you have is this, and again, this goes to the summary judgment standard and what my client is entitled to as the non-movement here. We have, he says, he takes pictures, he says something needs to be done. It's not done. The SMCI superintendent writes a letter, says something needs to be done. It's not done. Not for months and months and months. We have a declaration from the biohazard orderly in July that says the staff know that the mold is back. Now it's his job, he's an incarcerated person whose job is to clean up these sort of incidents. He says, I'm not being given equipment. I'm doing it on my own. They know it's back. They're ignoring it. Eventually, what we have is we have a declaration in November that says the mold remediation is actually starting. So it starts in February. It goes to November. Now could defendants present to a jury that that is a reasonable accommodation? They could, but I don't think it's a very compelling argument and it's certainly not the case that it's a reasonable accommodation as a matter of law. So given that they were put on notice. Well, wait a minute. You've now switched over to reasonable accommodation versus deliberate indifference. They have to be deliberately indifferent to the need for accommodation. That's right. So if they're making this effort. Your Honor, they're not making the effort. I thought you just said they did from February onward. From February to November, they're not making the effort. So we have. Oh, I thought you said the opposite. No, November is when the effort begins. Now at a couple of points, they give incarcerated people bleach and say, go clean it up. And incarcerated people, as they repeatedly say, spend a lot of time doing their best to clean it up themselves. Not at the direction of defendants, occasionally at the direction of defendants, but mostly on their own, just to try to protect themselves. And of course, the mold remediation is just only one of many possible accommodations. He could have just been allowed to shower somewhere else. He could have been transferred to a different unit. He could have been transferred to a different facility. These were all. Now are those accommodations on this record so plainly unreasonable that when defendants were put on notice of them and they failed to act, that they were not deliberately indifferent? I think that requires making, resolving factual questions against my client. And is part of the problem that you can't kill mold with bleach? Yes, that's a big part of the problem. And he filed grievance forms saying, why are you giving us bleach? Please give us something to kill the mold with. The biohazard orderly says, submits declarations. This is a prose litigant litigating while incarcerated. He's doing a pretty effective job, actually, of building a record of declarations from other incarcerated people saying, this is the officer who says we know the mold is back. A month later, here's the officer who denies that there ever was mold. And so, yes, that is one problem among many. And again, defendants cannot have failed to have been on notice of it because it's specifically in the grievance reforms that Mr. Eaton filed. Counsel, do you want to? I'll reserve my time. Thank you. May it please the Court. Pinesh Shah for the State Defendants, asking the Court to affirm the District Court's judgment. In our view, the simplest analysis here is that most of this case is moot. And the only part that isn't, the damages claim, as Mr. Weiss agrees, requires deliberate indifference, which, in our view, the record here does not support. By plaintiff's own admission, defendants consistently took measures to address shower mold. And those measures were at least, at times, temporarily successful. And to address your Honor's question about whether bleach is a way to kill mold, I'm looking at ER 156. This is documents submitted by plaintiff. And it says basic mold cleanup. Disinfect these clean surfaces with one of the following household bleach solutions. And so, you know, even if these were ineffective measures, they were precisely the kind of And because they took those measures, they can't have been indifferent because action is the opposite of indifference. I'm sorry. Could you say the page again? I'm having trouble figuring out what you're putting. I'm looking at ER 156. Does the ER go to 156? There's the SDR. I'm sorry. I'm just having trouble figuring out what you're putting. That's all right, Your Honor. I'm looking at appellant's excerpt of record, ER 156. I don't know if there's a better way to identify where it is. This is docket entry 13 on this court's docket. I'm sorry. I think I'm looking in the wrong place. It's my fault. I'll get there in a second. Okay. And then also on the question of sort of the deliberate mens rea, I don't think that this record establishes that defendants were deliberate to plaintiff's need because so far as this record shows, they had no basis to believe that he was suffering any sort of physiological effects as a result of black mold because so, you know, to the extent that he, that plaintiff... That seems to me to create an issue of fact on the effects of the mold. I think that it is his burden, Your Honor, to establish that he suffered some effect as a result of the mold. Well, we're here on summary judgment, though, correct? But even on summary judgment, he can't proceed past summary judgment unless he creates a record that... He says, I have, I suffered. Right now, we have to take that as true. Do we not? I disagree, Your Honor. I think if the record contained nothing but that, perhaps yes, but where he produces no objective medical evidence corroborating or verifying that, and we produce medical evidence rebutting that, I don't think that a claim that requires a sort of medical condition and medical causation can be established solely on a plaintiff's lay say-so. What's your best case that says that? I don't have a case that says that, Your Honor. It's certainly not readily available, but as I understand the rules of evidence, if something requires expert testimony, an expert needs to testify to it, and questions about medical causation, in my view, are precisely the kinds of questions that require expert testimony. I think in any normal civil case, an injured party couldn't come and say, based on my say-so, defendant's actions harmed me. There would need to be some sort of objective medical evidence. I'm looking at this page now that I did find. I'm sorry, it took me a second, but this page has a lot of different things, like remove the, reduce the humidity, and fix the source of the water leak, and all kinds of other things. Do we have reason to think they did all those things? No, Your Honor, but I don't think that failure to do all of these things establishes deliberate indifference. If we're doing something that is recognized as sufficient to, as a reasonable measure, then I don't think we're being deliberately indifferent. Well, but if you have to do like five things to fix the problem, and you do one of them, why is that enough to be a reasonable accommodation if it doesn't actually fix the problem? I think it's not a bad place to start, Your Honor, and if it continues to not resolve the problem, then perhaps further measures need to be taken. But, you know, certainly it was temporarily successful. This is not like a situation in Duval where, you know, this court said in Duval just taking action isn't enough, but the kind of example given in Duval was, you know, if somebody is hard of hearing, it's not enough to simply speak louder. That is not a sufficient accommodation. But here, this is not sort of as patently unreasonable as that. It's in fact something that... But why isn't that a fact question? I mean, maybe you could say, like, trying to clean it with bleach is a reasonable thing to do, and then they can say, actually, whatever documents say you have to do five different things, and that's only one of them, and the jury will figure out whether that was a reasonable step. Why is this a thing we could decide as a matter of law? Because I think, Your Honor, just deliberate indifference is a relatively high standard, because taking action of this sort is sufficient to refute deliberate indifference. What role does the pandemic play in this? Because I recall that one of the responses to the grievance in the summer of 2020 said something like, I don't have the page number, but it said something like, we're going to have access to the facility. So what role does that play, if any, in the analysis of whether there's a factual issue on deliberate indifference? I think, Your Honor, it can play a role. The pandemic is a very unique factual situation. Perhaps more record development might be necessary in some other circumstances. But for this, I think it can affect the reasonableness of the accommodation. If you're taking efforts, and perhaps not as complete efforts as plaintiff would like, to the extent that we're being hamstrung by circumstances that everybody's being hamstrung by, I don't think that our efforts are unreasonable. I think that was ER 133, if I'm remembering right. I'm sorry, I interrupted you. And I think that certainly affects the deliberate indifference standard. To the extent that we're failing to do more than we did, and to the extent that plaintiff suggests we should have done more, if those efforts are not reasonably available given the circumstances, I think that goes towards establishing that we were not being deliberately indifferent. But why isn't that just also a jury question? I'm confused about why. You could argue to the jury, we did the best we could under the pandemic. We couldn't get anyone in to fix this. But I don't think that's obvious from plaintiff's complaint. I think given the summary judgment record, and everything we've sort of drawn out in our brief, no reasonable jury could conclude that defendants were deliberately indifferent. Counsel, let me ask you a question related to that. Were prison officials aware that the mold, after cleaning, kept coming back? The record establishes that they were receiving complaints about that, Your Honor. I'm not sure if the record establishes that we were aware of that. Certainly I think corrections officers on the ground may have been aware, but I'm not sure whether the record establishes that anybody higher than that were aware of that. So my understanding of this tile replacement was that it was actually like a physical plant renewal effort that was planned for reasons other than the mold anyway. It might have been slowed down by COVID, but that it wasn't really originally because of the complaints of the mold. Am I right about that? Your Honor, I think you're right that there was multiple reasons why they were doing it. It wasn't solely a response to mold. That's right, Your Honor. And I said complaint, but you're right at summary judgment. I meant the general complaint about the mold. So we're right. We need to look at the whole record here, but how do we take, I mean, there may be a reference to like where this is the time of COVID or whatever, but is it so clear that there's nothing more they could have done because of COVID on this record that we could decide that as a matter of law at this point? I think given the efforts that we took, which I think are substantial, given that they were at times successful, if only temporarily, given that those efforts were consistent with some of the things that plaintiff's own evidence suggests we should have done, and given that further, given that this was all happening sort of against the backdrop of the pandemic, I think all that together prevents a reasonable fact finder for concluding that we were deliberately indifferent, which, again, I think is a high standard under this court's case law. Thank you. Can you articulate again what you think the standard is? So if there's a need for reasonable accommodation and whatever steps are taken are not, and they're aware of the problem and aware that someone needs to be accommodated, what do you think the deliberate indifference puts on top of that? I think it's sufficient to take efforts that would be reasonably calculated to ameliorate the problem. So, you know, it wouldn't be you wouldn't be able to defeat deliberate indifference by speaking more loudly to somebody who's hearing impaired. But taking the sort of steps that we took here are sufficient to defeat deliberate indifference, even though they weren't successful. You don't have to be successful to defeat deliberate indifference. But it has to be reasonably aimed at making a reasonable accommodation, like it has to. So we have to figure out whether what they were doing was actually going to be a reasonable accommodation, which I think means it has to have worked. I don't think that's right, Your Honor. I think I think taking steps that are reasonably calculated to work, even if they don't ultimately work, are still sufficient. Well, but wouldn't the person still be I mean, you might it might be impossible, I guess, to do the accommodation. So we get to what's reasonable, reasonably possible as an accommodation in this context. But if it would have been possible to do this, doesn't it need to work to be a reasonable accommodation? I mean, maybe you say the reasonable accommodation can take a long time and convince the jury that that is still reasonable. It took it to spend a year working it out as reasonable or something. But doesn't it eventually need to work to be a reasonable accommodation? So if I could finish answering your question, Your Honor, if you're taking efforts that ultimate that could work, but ultimately ultimately prove not to be successful, you're not being deliberately indifferent. It may not be ultimately a reasonable accommodation, but the question about deliberate indifference doesn't require a successful accommodation. Counsel, I have a question. Because it's about state of mind. That's right, Your Honor. I have a question on that. If the people doing the cleanup were aware that the mold kept coming back, why wouldn't the prison officials with responsibility be charged with that knowledge? I think, Your Honor, under a Section 1983 claim involving younger liability, I think knowledge by an individual is required because I don't think there's institutional liability. If I could try to rephrase the question, because I think I'm trying to articulate the same point here. If the mold keeps coming back, then don't the officials know that whatever steps they are taking don't work? I think they have to think that what they're doing is reasonably likely to be a reasonable accommodation, which means you're trying to say, well, it would have worked. But, in fact, it keeps coming back, which shows that it's not working. So why isn't that their knowledge that this is the effort they're doing doesn't work? So, first of all, they're not being deliberately indifferent. They're taking some action. But more importantly, I think it would be a sufficient – if it works for three or five days and they just keep cleaning every three or five days, I think that would be a reasonable accommodation. And, of course, they didn't end up doing that. But I don't know that simply because the mold keeps coming back doesn't mean that they're being indifferent. But if, in fact, it comes back every five days to be a reasonable accommodation, don't they need to clean every four days? Maybe so. But working towards that doesn't mean that they're deliberately indifferent if they don't jump right to that solution. Well, eventually, after four months of it, I mean, I think at some point they do know, right? I think that's Judge Gould's question, if I understood it. Well, and then, you know, I think it's also not deliberately indifferent if they conclude that we can clean temporarily and then the longer-term solution is replacing the surfaces, which is slated to happen. And so, you know, it's sort of an interim solution until a more permanent solution is available, which is in the works. And I think that's also not deliberately indifferent. Okay, thank you. All right, we ask the Court to affirm. Thank you. Okay, we'll hear from the appellant with the time we have left for rebuttal. Good morning, Your Honors. Just a few quick points. So this idea of whether he, the medical evidence about his suffering, I would say, first of all, it's obviously contested, whether he was, whether his conditions were exacerbated. Defendants introduced two pieces of objective medical evidence. One was by a nurse who never saw him. One was by a nurse who said, I did an air test and it was even better than last time. We have no medical records about that test. We have no idea what that means. Neither of them say anything about mold. But more importantly, that goes to a permanent injury is not an element of ADA. He said he was suffering while he was in the shower. If his conditions were not exacerbated, but he only suffered while he was in the shower, that's still a Title II ADA violation. And that's actually uncontested. There's no evidence suggesting that he didn't suffer in the shower. What evidence is there that prison officials knew he was suffering in the shower? Well, we just have his complaints and their disregard of his complaints. And one of them says, I can't breathe in the shower, right? Yeah, that's right. And to get to deliberate indifference, I would just say, going record piece by record piece, if you don't have time to do right now, it's hard to exaggerate how little that they did over this year. But a more important doctrinal point is that to some of Judge Friedland's questions, they need to have known about a substantial likelihood of an ADA violation. And remediation of the mold was one possible accommodation. He requested other accommodations. This is at ER 87. He requested a transfer. But, of course, once you request a reasonable accommodation, the burden shifts to defendants, and they can do other accommodations. They could have let him use a different shower. They could have transferred him to a different facility. There's various things that they could have done. What they did instead was oscillate back and forth between, and this goes to different staff members acting different levels of unreasonableness, to the point of, like, a high-level official, a low-level official, 1983. There's no Monell-type issue with the ADA. Public entities are vicariously liable for the ADA violations of any of their employees. It doesn't matter if it's a line official. That doesn't matter. So what we have here is our defendants who are aware that the mold is coming back and there are a number of reasonable accommodations, which is fact-intensive, context-specific. I think we probably have your argument in hand. Your time is up. Okay. Thank you. Do we have other questions? Judge Graber or Judge Friedman? No, thank you. Hearing none, that case will be submitted. This is a difficult case, and we appreciate the excellent advocacy on both sides of the question presented. The court will now take a—well, the Eden case should be submitted, and the court will now take a short recess, about a 10-minute recess.
judges: GRABER, GOULD, FRIEDLAND